# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH FEDERAL CIRCUIT

| | |
|---|---|
| PATRICK SAWYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| **v.** | **)** 20-cv-03211 |
| | ) |
| DR. STEVEN KOTTOMAN, | ) Judge James E. Shadid |
| FRANKLIN BROWN, and | ) |
| KAYLA MCLAREN, | ) |
| | ) |
| Defendants. | ) |

## <u>NOTICE OF APPEAL</u>

Plaintiff, PATRICK SAWYER, by and through their undersigned counsel, hereby respectfully appeal to the United States Court of Appeals for the Seventh Circuit from (1) the Judgment Order in favor of the Defendants, granting their Motion for Summary Judgment against Plaintiff, and dismissing the case with prejudice (DOC # No. 77) entered September 8, 2023, and (2) the Judgment in a Civil Action Order in favor of the Defendants, dismissing the case with prejudice (DOC # No. 78) entered September 11, 2023

Dated: October 5, 2023

Respectfully submitted,

Zane D. Smith

ZANE D. SMITH & ASSOCIATES, LTD.
111 W. Washington St.,
Suite 1750
Chicago, Illinois 60602
(312) 245-0031
zane@zanesmith.com
sheila@zanesmith.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

PATRICK SAWYER,             )
                                       )
              **Plaintiff,**     )
     **v.**                              )     **Case No. 20-cv-3211**
                                         )
**STEVEN KOTTEMANN,** *et al.*,   )
                                       )
             **Defendants.**    )

## ORDER ON MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court for ruling on Defendants' Motion for Summary Judgment under Federal Rule of Civil Procedure 56 and Local Rule 7.1. (Doc. 66). For the reasons below, Defendants' Motion is GRANTED.

## BACKGROUND

Plaintiff Patrick Sawyer filed a complaint under 42 U.S.C. § 1983 alleging that Defendants Dr. Steven Kottemann, Franklin Brown, and Kayla McClaren were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment while he was incarcerated at Lincoln Correctional Center ("Lincoln"). (Doc. 1). Specifically, Plaintiff alleges Defendants were deliberately indifferent to the treatment of his Crohn's disease and anemia and failed to provide appropriate medical care following a fall he sustained in the shower on August 10, 2019.

Defendants filed a Motion for Summary Judgment (Doc. 66); Plaintiff filed a Response (Doc. 69); and Defendants filed a Reply (Doc. 76). This Order now follows.

1

# MATERIAL FACTS

*Parties*

Plaintiff is an inmate in the custody of the Illinois Department of Corrections ("IDOC") and is presently housed at Pontiac Correctional Center. During the relevant time period, he was incarcerated at Lincoln.

Defendant Dr. Kottemann was employed by Wexford Health Sources, Inc. ("Wexford") as the Site Medical Director ("Medical Director") at Lincoln between October 2015 and March 2020. As the Medical Director, Dr. Kottemann was responsible for the care of approximately 1,000 male inmates, including Plaintiff.

Defendants Brown and McClaren were registered nurses. They were employed by Wexford and worked at Lincoln during the relevant time period.

*Medical Treatment for Crohn's Disease and Anemia*

Plaintiff was diagnosed with Crohn's disease in 2006 and experiences flare-ups every two or three months.

According to Plaintiff's medical records, Dr. Kottemann first noted Plaintiff's anemia in September 2018 and treated him in October and November 2018. (Doc. 71 at pp. 2-3, 6).

Dr. Kottemann saw Plaintiff around January 22, 2019, and referred Plaintiff to Dr. Kaiser, a gastroenterologist, to be re-evaluated due to Plaintiff's abdominal pain, rectal bleeding, a history of Crohn's disease, and anemia.

Plaintiff's first visit with Dr. Kaiser was in January 2019. Dr. Kaiser recommended a surgical procedure, but Plaintiff declined because "he didn't feel like [he] needed to be

cut." (Doc. 66-1 at 17:2–4). Dr. Kaiser performed a colonoscopy and a CT enterography. The results were normal, and there was no evidence of a Crohn's disease flare-up. It was determined that Plaintiff suffered from anemia and his iron level was low.

Dr. Kottemann followed Dr. Kaiser's recommendations to give Plaintiff a probiotic and continued his other medications. One of those medications was Imuran, which Plaintiff had been prescribed since 2006. Imuran came in pill form, and Plaintiff was permitted to keep the medication in his cell to take twice a day.

On April 23, 2019, Plaintiff's labs showed he was anemic. Defendant Kottemann determined the cause of Plaintiff's mild, chronic anemia was low iron levels stemming from use of an acid-blocking drug which inhibits the body's absorption of iron. (Doc. 66-2 at 19:11-5). Dr. Kottemann prescribed iron and vitamin C to address Plaintiff's anemia. Dr. Kottemann continued monitoring Plaintiff's anemia by periodically having labs drawn and evaluating the results.

During an examination on May 6, 2019, Dr. Kottemann noted: Chief Complaint: follow up Anemia; S): only taking one 50 mg Imuran. Feels fine, no belly pain. BMs black but never bloody. Refused double balloon enterography to further evaluate equivocal CT report, not believing problem is surgical. O) looks well, belly flat, nontender, with no masses, bowel sounds normal. P) Med change: stop Pepcid; start probiotic: 1 every day for 6 months. Decrease Imuran to 1 every day for 3 months. Lab in 2 months; CBC, retic count, Vitamin B-12, CMP, ESR. CBC of 4/23/2019 Hemoglobin down to 10.5, Hematocrit 34.4. White blood cell count and platelet in range. "A": Anemia not responding to iron

potentially because HZ blocker decreases gastric acidity. Crohn's quiet at this time. See MD a week after labs done. (Doc. 66-5 at pp. 28-30).

On May 21, 2019, Plaintiff's hemoglobin level test showed that his hemoglobin level was still low.

On July 28, 2019, Plaintiff reported to the Health Care Unit complaining of a flare-up of his Crohn's disease. Plaintiff was prescribed prednisone and placed on 23-hour evaluation until Dr. Kottemann could examine him the following day. Dr. Kottemann ordered labs, which showed that Plaintiff was still anemic. (Doc. 66-2 at 85:23-86:5).

Dr. Kottemann admitted Plaintiff to the infirmary on July 29, 2019. (*Id*. at 51:7-52:3; Doc. 66-5 at pp. 44-47). Plaintiff told Dr. Kottemann that he believed the flare-up was caused by a conversation he had with his ex-wife two weeks prior, that he was feeling better, and wanted to go back out on the grounds. (Doc. 66-1 at 39:21-40:22; Doc. 66-2 at 93:21-94:11; Doc. 66-5 at pp. 44-47). Dr. Kottemann examined Plaintiff, determined that Plaintiff had experienced a mild relapse due to a Crohn's flare-up, and concluded that his condition was improving. Dr. Kottemann prescribed prednisone, Tylenol, and tramadol and continued his prescription for Imuran. Dr. Kottemann noted that Plaintiff, on his own accord, was taking Imuran only once a day. Dr. Kottemann instructed Plaintiff to take Imuran twice a day as prescribed.

Dr. Kottemann wanted Plaintiff to remain in the infirmary for three days for observation, but he was discharged on July 29, 2019, because another inmate with more acute medical conditions needed the bed. Plaintiff claims that on July 29, 2019, he showed a nurse there was blood in his stool. (Doc. 66-1 at 43:7-11). Dr. Kottemann testified that

4

"[t]he nurse never observed that [diarrhea and rectal bleeding]. I don't think he even said he did." (Doc. 66-2 at 53:21-24). Dr. Kottemann scheduled Plaintiff for a follow-up visit on August 2, 2019.

On August 2, 2019, Dr. Kottemann saw Plaintiff for his follow-up appointment. Plaintiff reported that he had been eating food in the mess hall and from commissary and needed to take tramadol after eating. Plaintiff also reported that he increased his Imuran dose to three times a day on his own accord. Dr. Kottemann noted that Plaintiff was not having diarrhea, but he had a red streak in his eye, which he developed after vomiting. (Doc. 66-2 at 59:17-60:12; Doc. 66-6 at 1-2). Plaintiff claims that he was still experiencing bloody diarrhea on August 2, 2019. (Doc. 66-1 at 47:2-13). Dr. Kottemann assessed Plaintiff, finding that he had a good response to the prednisone and only lost a pound since April 2019. Dr. Kottemann instructed Plaintiff to take Imuran as prescribed and not to change the dosage.

According to Plaintiff's medical records, he did not see a medical provider between August 2, 2019 and August 10, 2019. (Docs. 66-5, 66-6, 66-7 66-8, and 66-9).

*Fall on August 10, 2019*

Around 7:05 p.m. on Saturday, August 10, 2019, Plaintiff fell in the shower, hit his head, and was bleeding. Defendant Nurse McClaren, who worked the 7:00 a.m. to 7:00 p.m. shift, volunteered to go to the housing unit with a wheelchair to get Plaintiff and bring him back to the nurses' station at the Health Care Unit for medical treatment. Nurse McClaren testified that Plaintiff told her he bumped his head and his head hurt. (Doc. 66-3 at 12:17-19). Plaintiff testified he tried to explain to Nurse McClaren that his neck hurt

and that he wanted to go to the hospital. (Doc. 66-1 at 51:3-11). Plaintiff claims Nurse McClaren dismissed his complaints, told him to "shut up," and said she did not have time because she was getting off work. *Id.* at 51:12-17; 65:9-14.

Plaintiff testified that when he arrived at the nurses' station, he told Nurses McClaren and Brown that he needed to go to the hospital. (Doc. 66-1 at 52:22-23). Defendant Nurse Brown, who worked the night shift, took over Plaintiff's care, and Nurse McClaren left because her shift was over.

Nurse Brown took Plaintiff's vitals and performed a neurological assessment; the results were normal. Plaintiff denied any pain and walked freely around the cell. Nurse Brown gave Plaintiff Tylenol, ice for his head, and juice boxes and instructed Plaintiff to stay in bed and not to get up without someone present.

Around 8:45 p.m., Nurse Brown called Dr. Kottemann to inform him that Plaintiff had a bloody bowel movement, as Nurse Brown knew Plaintiff has Crohn's disease. Dr. Kottemann told Nurse Brown that the blood in Plaintiff's stool was due to hemorrhoids. (Doc. 66-4 at 38:14-18). Dr. Kottemann planned to examine Plaintiff first thing in the morning on Monday, August 12, 2019.

According to Nurse Brown, he checked on Plaintiff throughout the night. (Doc. 66-4 at 38:15-19). Each time Nurse Brown observed Plaintiff walking around his cell, he instructed Plaintiff to get back in bed. *Id.* Plaintiff disputes that Nurse Brown checked on him during the night, because according to the nursing notes, Nurse Brown did not check on him from 8:45 p.m. until 1:00 a.m. (Doc. 69 at p. 10, ¶ 28). A nursing note indicates that

Nurse Brown checked on Plaintiff at 1:00 a.m. and noted he was sleeping and showed no signs of distress. (Doc. 66-4 at 97; Doc. 66-6 at pp. 5-6).

*Fall on August 11, 2019*

At some point, Plaintiff fell out of the bed. When he awoke, he was lying in a pool of blood the size of two basketballs and could not move his arms or legs. He tried to yell for help but could not. Lieutenant Allen found him on the floor around 2:20 a.m. The parties dispute when Plaintiff fell and how long he remained on the ground.

Plaintiff suffered an injury on his right eyebrow and a laceration on top of his head, he bit his lip, was confused, and could not sit up. Nurse Brown alerted security to call 911 and said to tell them it was a head injury so they would get there faster. Nurse Brown took Plaintiff's vitals and cleaned his head. Plaintiff was placed in a neck brace and taken to the ambulance on a stretcher.

Plaintiff was taken to St. John's Hospital in Springfield, Illinois, where his head wounds were treated, and he was given six pints of blood. At the hospital, Plaintiff's hemoglobin was down to 6.6. Plaintiff needed spinal decompression surgery, but it could not be performed until his hemoglobin was raised to at least 9. Plaintiff informed hospital personnel that he had experienced rectal bleeding for four to five days prior to his admittance. A gastroenterologist was consulted about the rectal bleeding. Plaintiff was found to have an unknown Salmonella infection; a PCR panel was scheduled; and Plaintiff was prescribed Ciprofloxacin for two weeks. Additionally, a previously unknown membrane was discovered across the outflow of Plaintiff's heart.

7

Dr. Kottemann testified Plaintiff fell in the shower due to a combination of unknown factors, including a Salmonella dysentery infection, a previously unknown membrane across the outflow of his heart, and a preexisting ruptured disc in his neck. (Doc. 66-2 at 30:15-21; 32:23-33:3). Dr. Kottemann also testified that Plaintiff showed no signs or symptoms of needing a cardiac workup prior to the fall and did not have any condition that he could have treated which would have prevented the fall from happening. *Id.* at 30:15-21, 32:3-6, 61:18-24. Plaintiff asserts Dr. Kottemann knew he had Crohn's disease and anemia, and a patient who suffers from anemia can experience syncope (fainting or falling down). (Doc. 69 at p. 12; Doc. 66-2 at 25:13-18).

Since the fall, Plaintiff testified that he suffers from memory issues, has difficulty sleeping, a stiff neck, and a constant shooting pain down his left side and arm. Plaintiff claims he has an irregular gait and cannot walk fast, run, or jog. Plaintiff takes tramadol and Tylenol for pain and Gabapentin to loosen his joints. (Doc. 66-1 at 76-77, 79, 91-94).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v.*

8

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In order to successfully oppose a motion for summary judgment, a plaintiff must do more than raise a "'metaphysical doubt' as to the material facts, and instead must present definite, competent evidence to rebut the motion." *Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 (7th Cir. 2001) (internal citation omitted).

### DELIBERATE INDIFFERENCE STANDARD

To establish an Eighth Amendment violation by a prison official for failure to provide adequate medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976); *Farmer v. Brennan*, 511 U.S. 835, 837 (1994). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the prison official acted with deliberate indifference to his medical need, which is a subjective standard. *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

"To show deliberate indifference, the plaintiff must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). In other words, "a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original) (citing *Farmer*, 511 U.S. at 844)). "This is a high bar 'because it requires a showing

[of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (quoting *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012)).

"A medical professional's deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *King v. Kramer*, 680 F.3d 1013, 1018-19 (7th Cir. 2012) (internal quotation omitted). "[M]ere negligence" or even civil "objective recklessness" simply "is not enough." *Petties*, 836 F.3d at 728; *Farmer*, 511 U.S. at 836-38. "This subjective standard requires more than negligence and it approaches intentional wrongdoing. The Supreme Court has compared the deliberate indifference standard to that of criminal recklessness." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837) (internal citations removed)). A prisoner's "dissatisfaction with a doctor's prescribed course of treatment" is not enough to sustain a deliberate indifference claim "unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996); *see also Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021).

It is "implicit in the professional judgment standard itself" that "inmate medical care decisions must be fact-based with respect to the particular inmate, the severity and stage of his condition, the likelihood and imminence of further harm and the efficacy of available treatments." *Petties*, 836 F.3d at 729 (quoting *Roe v. Elyea*, 631 F.3d 843, 859 (7th

Cir. 2011)). When a prison medical professional employs his or her professional judgment, that decision is "entitled to deference" unless "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008). Plaintiff must present evidence the medical professional "knew better than to make the medical decisions that [he] did." *Petties*, 836 F.3d at 731; *see also Collingnon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998). "An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay on medical treatment to succeed." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (emphasis in original).

## ANALYSIS

Defendants argue they are entitled to summary judgment because they utilized their professional medical judgment while treating Plaintiff; Plaintiff cannot establish the elements of deliberate indifference necessary to succeed on his claims; and Plaintiff merely alleges a disagreement with a prescribed course of treatment. Defendants do not dispute that Plaintiff suffered from an objectively serious medical condition. As such, Plaintiff's claim hinges upon whether Defendants acted with deliberate indifference.

I.    **Defendant Kottemann was not deliberately indifferent to Plaintiff's serious medical needs.**

Plaintiff alleges Dr. Kottemann was deliberately indifferent to the treatment of his Crohn's disease and anemia and following his fall in the shower on August 10, 2019.

11

A. **Crohn's disease**

When Plaintiff complained about symptoms of his Crohn's disease in January 2019, Dr. Kottemann immediately referred him to a gastroenterologist. Plaintiff saw the gastroenterologist, Dr. Kaiser, for an evaluation in January 2019, and saw him several times thereafter. Dr. Kaiser performed a colonoscopy and a CT enterography, and the results were normal. Plaintiff refused the surgical procedure that Dr. Kaiser recommended. Dr. Kottemann implemented Dr. Kaiser's recommendations to prescribe a probiotic and continue Plaintiff's other medications.

On July 28, 2019, Plaintiff complained about a flare-up of his Crohn's disease. Plaintiff was prescribed prednisone to treat the flare-up. Dr. Kottemann ordered labs and placed Plaintiff on a 23-hour observation until he could examine him the next day.

When Dr. Kottemann examined Plaintiff on July 29, 2019, Plaintiff reported that he was better and wanted to go back out on grounds. (Doc. 66-1 at 39:21-40:22; Doc. 66-2 at 93:21-94:11). Dr. Kottemann determined that Plaintiff had experienced a mild relapse of his Crohn's disease, but his condition was improving. Plaintiff informed Dr. Kottemann that he lowered his dose of Imuran on his own to once a day; Dr. Kottemann instructed Plaintiff to take it twice a day as prescribed. Dr. Kottemann prescribed Tylenol, tramadol, and prednisone. *Id.* at 94:13-20.

Dr. Kottemann originally planned to keep Plaintiff in the infirmary for three days and monitor Plaintiff's bowel movements, but Plaintiff was released earlier than anticipated because another inmate with more acute needs needed the space. Plaintiff claims he showed a nurse blood in his stool and asked why he was being discharged from

12

the infirmary, but there is no objective evidence that Plaintiff was bleeding at the time of his discharge. Dr. Kottemann scheduled a follow-up visit with Plaintiff on August 2, 2019.

During the follow-up appointment on August 2, 2019, Plaintiff reported he had been eating food from the mess hall and commissary and needed to take tramadol after eating. Dr. Kottemann noted in the chart that Plaintiff had only lost one pound since April 2019, was not having diarrhea, and had responded well to prednisone. Plaintiff told Dr. Kottemann that he was taking Imuran three times a day, and Dr. Kottemann again instructed Plaintiff to take Imuran as prescribed.

Here, the Court finds the evidence shows Dr. Kottemann provided consistent care for Plaintiff's Crohn's disease, which included a referral to a specialist, diagnostic procedures, and medication. Dr. Kottemann placed Plaintiff on observation and ordered labs when his condition flared-up on July 28, 2019, and examined him on July 29, 2019. Plaintiff argues he should have remained in the infirmary for three days when he experienced a flare-up, but Dr. Kottemann examined Plaintiff again only a few days later on August 2, 2019, and noted his condition had improved.

As demonstrated by the medical records, Plaintiff was not compliant with his medications because he had not been taking Imuran as prescribed. He was self-administering his medication contrary to Dr. Kottemann's instructions.

The cause of Plaintiff's falls on August 10 and 11, 2019 is unknown. Plaintiff has not presented any objective evidence that his Crohn's disease caused or contributed to his falls. "[S]ummary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its

version of events." *Johnson v. Cambridge Industries, Inc.*, 352 F.3d 892, 901 (7th Cir. 2003) (internal quotations and citation omitted). Therefore, the Court finds that Dr. Kottemann was not deliberately indifferent to Plaintiff's Crohn's disease.

**B. Anemia**

In April 2019, lab tests revealed Plaintiff had mild, chronic anemia. Dr. Kottemann believed the anemia was caused by Plaintiff's use of an acid-blocking drug which inhibited the absorption of iron. (Doc. 66-2 at 19:11-20:5). To treat Plaintiff's anemia, Dr. Kottemann prescribed iron and vitamin C. Dr. Kottemann monitored Plaintiff's anemia by regularly evaluating his bloodwork. Each time, Dr. Kottemann noted Plaintiff's condition as a mild, chronic anemia.

Based on the undisputed evidence, the Court finds that Dr. Kottemann was not deliberately indifferent to Plaintiff's anemia. He regularly monitored Plaintiff's anemia and prescribed medication. While Plaintiff claims Dr. Kottemann should have done more, a prisoner's "dissatisfaction with a doctor's prescribed course of treatment" is not enough to sustain a deliberate indifference claim "unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes,* 95 F.3d at 592 (7th Cir. 1996). There is no indication that Dr. Kottemann's actions were blatantly inappropriate. Other than his own opinion, Plaintiff has not presented objective evidence that his anemia caused or contributed to his falls. Plaintiff's claims related to the treatment of his anemia fall far short of the demanding standard for deliberate indifference.

14

**C. Fall in shower on August 10, 2019**

Plaintiff also alleges that Dr. Kottemann was deliberately indifferent to his head injury after he fell in the shower on August 10, 2019, because he placed Plaintiff in the infirmary for observation until he could examine him instead of calling an ambulance to take Plaintiff to the hospital. Plaintiff also claims Dr. Kottemann was deliberately indifferent to his serious medical needs because, when Nurse Brown notified him about Plaintiff's bloody stool, Dr. Kottemann determined the blood was caused by hemorrhoids without physically examining Plaintiff.

Prior to Plaintiff's fall in the shower, the undisputed evidence shows that Dr. Kottemann had been consistently monitoring Plaintiff's blood, and there is no evidence that Dr. Kottemann consciously disregarded an excessive risk or that he acted negligently, let alone with deliberate indifference. The medical records show that the neurological evaluation after the fall was normal; Plaintiff's vitals were normal; and there was no redness and swelling. No reasonable jury would find that the decision to keep Plaintiff under observation instead of calling an ambulance was blatantly inappropriate. This type of decision is a "classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107; *see also West v. Matz*, 740 F. App'x 103, 104 (7th Cir. 2018) (finding that decisions such as whether to order x-rays or additional diagnostic techniques or forms of treatment are a matter of medical judgment).

Regarding Dr. Kottemann's assessment of Plaintiff's bloody stool, Nurse Brown, who observed the stool, testified that Plaintiff's bowel movement was normal, but there was blood on top, which was indicative of hemorrhoids. (Doc. 66-4 at 37:15-17). When

Nurse Brown called Dr. Kottemann and reported it, Dr. Kottemann agreed the blood was due to hemorrhoids. *Id.* at 37:17-19. Dr. Kottemann was not deliberately indifferent by making this assessment without physically examining Plaintiff. Moreover, he planned to examine him first thing in the morning. *Id.* at 37:19-20.

The Court finds Dr. Kottemann was not deliberately indifferent to Plaintiff's serious medical needs. Therefore, summary judgment is appropriate.

**II.    Defendant McClaren was not deliberately indifferent to Plaintiff's serious medical needs after he fell in the shower on August 10, 2019.**

Defendant Nurse McClaren's sole involvement in this case was bringing Plaintiff to the nurses' station in a wheelchair after he fell in the shower on August 10, 2019, around 7:05 p.m. Plaintiff alleges that Nurse McClaren was deliberately indifferent to his serious medical needs because, when he tried to tell her about his condition and asked to go to the hospital, she dismissed his complaints and told him to "shut up." (Doc. 66-1 at 51:13-17; 65:9-14).

Nurse McClaren worked the day shift from 7:00 a.m. to 7:00 p.m. Although her shift had ended, she volunteered to transport Plaintiff back to the Health Care Unit in a wheelchair so that Defendant Nurse Brown could attend to him. (Doc. 66-3 at 7:2-13).

When she responded to the housing unit, Nurse McClaren she found Plaintiff standing in the common area. *Id.* at 6:17-18. Plaintiff appeared alert and oriented, showed no signs of acute distress, and was able to stand and talk. *Id.* at 6:20-21; 12:14-15. Nurse McClaren testified Plaintiff told her his head hurt because he bumped his head. *Id.* at

16

12:17-19. Nurse McClaren did not believe it was an "emergent or life-threatening event." *Id.* at 8:8-11.

Nurse McClaren wheeled Plaintiff to the nurses' station and transferred care of Plaintiff to Nurse Brown, as he was nurse on the night shift. (Doc. 66-3 at 42:24-43:5). Nurse McClaren then went home, as her shift had ended.

Here, the Court finds that Nurse McClaren's limited involvement in this matter does not amount to deliberate indifference under the Eighth Amendment. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (deficiencies in isolated aspects of prisoner's treatment do not establish deliberate indifference); *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997) (internal citation omitted). When Nurse McClaren took Plaintiff to the nurses' station, she had no further involvement and knew Nurse Brown would provide medical care.

Even if Nurse McClaren was dismissive of Plaintiff's complaints and told him to "shut up," there is no indication that electing not to call an ambulance was blatantly inappropriate. In her professional judgment, the situation was not "emergent," as Plaintiff appeared alert and oriented. As Plaintiff's injury report indicates, there was no redness or swelling and no injury was noted. (Doc. 66-10 at pp. 1-2).

No reasonable jury would find that Nurse McClaren intentionally disregarded a known risk to Plaintiff's health or engaged in "criminally reckless conduct." *See Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006) (Deliberate indifference requires proof "that an individual defendant intentionally disregarded the known risk to inmate health or safety."). Therefore, Nurse McClaren is entitled to summary judgment.

17

III.   **Defendant Brown was not deliberately indifferent to Plaintiff's serious medical needs following his fall in the shower on August 10, 2019.**

Plaintiff alleges Defendant Nurse Brown should have called an ambulance after he fell in the shower on August 10, 2019, because Plaintiff informed him that he was weak, he did not know why he fell, he hit his head, and his neck hurt. Plaintiff also argues that Nurse Brown should have checked on him more than once in the night, especially because of his Crohn's disease and anemia.

Defendant Brown argues he was not deliberately indifferent to Plaintiff's serious medical needs because he utilized his professional medical judgment during the course of Plaintiff's treatment.

Based on the undisputed evidence, the Court finds that Nurse Brown's treatment of Plaintiff after the fall on August 10, 2019, does not rise to the level of deliberate indifference. When Plaintiff arrived at the Health Care Unit, Nurse Brown performed a neurological evaluation, took Plaintiff's vitals, and instructed him to lie down and not get up without assistance. (Doc. 66-4 at 34:21-24). The injury report indicates that the neurological evaluation was normal; Plaintiff's head had no redness or swelling; his vitals were stable; and no injury was noted. (Doc. 66-10 at pp. 1-2). Nurse Brown placed Plaintiff under observation in the infirmary as Dr. Kottemann had instructed.

When Nurse Brown observed that Plaintiff's stool was bloody, he called Dr. Kottemann and advised him of Plaintiff's condition. Nurse Brown also provided Tylenol, ice for his head, and juice, instructed Plaintiff to ask for assistance if he needed to get up out of bed, and checked on him at least once during the night. It is undisputed that when

18

Nurse Brown checked in Plaintiff at 1:00 a.m., he was resting comfortably and showed no signs of distress.

Plaintiff insists that Nurse Brown should have called an ambulance after he fell in the shower because he informed Nurse Brown that he was weak, he did not know why he fell, and that his neck hurt. Plaintiff's disagreement with the course of care provided does not amount to deliberate indifference. *See Young v. Cnty. of Winnebago*, No. 00 C 50382, 2003 WL 1475384 (N.D. Ill. Mar. 21, 2003) (granting summary judgment where Plaintiff believed he required stitches but lacked evidence beyond a mere disagreement with a prescribed course of treatment).

Unfortunately, Plaintiff fell again during the night and was injured, but that does not mean Nurse Brown was deliberately indifferent or caused the injury. According to the nursing notes, Plaintiff fell out of bed sometime between 1:00 a.m. and 2:20 a.m. The exact cause of the fall and when it occurred is unknown. However, it is undisputed that as soon as Nurse Brown knew Plaintiff fell, he provided immediate medical attention and called an ambulance. Plaintiff has provided no evidence that the care administered by Nurse Brown after his fall on August 10, 2019, was "such a substantial departure from accepted professional judgment, practice or standards." *See Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 2015). Therefore, the Court finds that Nurse Brown is entitled to summary judgment.

19

**IT IS THEREFORE ORDERED:**

(1)     Defendants' Motion for Summary Judgment [66] is GRANTED. This action is DISMISSED WITH PREJUDICE. Plaintiff takes nothing. The parties will bear their own costs. The Clerk is directed to enter judgment and close this case.

(2)     Although Plaintiff's case has been dismissed, he remains responsible for the remainder of the $350.00 filing fee.

(3)     If Plaintiff wishes to appeal this judgment, he must file a Notice of Appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).

(4)     To proceed *in forma pauperis* on appeal, Plaintiff must file a Motion for Leave to Proceed on Appeal *in forma pauperis* and identify the issues he will present on appeal to assist the Court in determining whether the appeal is taken in good faith. Fed. R. App. P. 24(a)(1)(c); *Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (An appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff chooses to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED:     9/8/2023

s/ James E. Shadid
James E. Shadid
United States District Judge

20

AO 450 (Rev. 11/11)   Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

| | | |
|---|---|---|
| PATRICK SAWYER, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  20-3211 |
| I.D.O.C., et al., | ) | |
| *Defendants* | ) | |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐  the plaintiff *(name)* _____ recover from the
defendant *(name)* _____ the amount of
_____ dollars ($ _____ ), which includes prejudgment
interest at the rate of _____ %, plus post judgment interest at the rate of _____ % per annum, along with costs.

☐  the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____
_____ recover costs from the plaintiff *(name)* _____
_____ .

☑  other: that Plaintiff Patrick Sawyer's action against Defendants I.D.O.C., Lincoln Correctional Center, Hopps,
Wexford Health Care, Jane Doe, Jane and John Doe, and John Doe was dismissed on 11/20/2020 and the
action against Defendants Kottemann, Brown, and McClaren was dismissed with prejudice on 9/8/2023.
Plaintiff shall recover nothing on his claims against each of the named Defendants.

This action was *(check one)*:

☐  tried by a jury with Judge _____ presiding, and the jury has
rendered a verdict.

☐  tried by Judge _____ without a jury and the above decision
was reached.

☐  decided by Judge _____ on a motion for

Date:   9/11/2023 _____          *CLERK OF COURT*

_____
s/ Shig Yasunaga
*Signature of Clerk or Deputy Clerk*

22,CLOSED,MERIT REVIEW HELD,MOTION/SJ,PRISONER,REFER,RULE 16 CONFERENCE HELD,SERVICE ORDERED

**U.S. District Court**
**CENTRAL DISTRICT OF ILLINOIS (Springfield)**
**CIVIL DOCKET FOR CASE #: 3:20-cv-03211-JES-JEH**

Sawyer v. Kottoman et al
Assigned to: Judge James E. Shadid
Referred to: Magistrate Judge Jonathan E. Hawley
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 08/18/2020
Date Terminated: 09/08/2023
Jury Demand: Defendant
Nature of Suit: 555 Prisoner Petitions - Prison Conditions
Jurisdiction: Federal Question

**Plaintiff**

**Patrick Sawyer**
M48951
PONTIAC CORRECTIONAL CENTER
Inmate Mail/Parcels
PO Box 99
Pontiac, IL 61764
815-842-2816

represented by **Sheila A Genson**
ZANE D SMITH AND ASSOCIATES LTD
Suite 1750
111 W. Washington Street
Chicago, IL 60602
312-245-0031
Fax: 312-245-0022
Email: sheila@zanesmith.com
*ATTORNEY TO BE NOTICED*

**Zane D Smith**
ZANE D SMITH AND ASSOCIATES LTD
Suite 1750
111 W. Washington Street
Chicago, IL 60602
312-245-0031
Fax: 312-245-0022
Email: Zane@ZaneSmith.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**I.D.O.C.**
*TERMINATED: 11/20/2020*

**Defendant**

**Lincoln Correctional Center**
*TERMINATED: 11/20/2020*

**Defendant**

**Lisa Hopps**
*TERMINATED: 11/20/2020*

**Defendant**

**Wexford Health Care**
*TERMINATED: 11/20/2020*

**Defendant**

**Steven Kottemann**

represented by **Andrew M Ramage**
BROWN HAY & STEPHENS LLP
Suite 1000
205 S Fifth St
Springfield, IL 62705-2459
217-544-8491
Fax: 217-241-1333
Email: aramage@bhslaw.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Dylan Grady**
BROWN HAY & STEPHENS LLP
Suite 1000
205 S Fifth St
Springfield, IL 62705-2459
217-544-8491
Fax: 217-544-9609
Email: dgrady@bhslaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jane Doe**
*Nurse*
*TERMINATED: 11/20/2020*

**Defendant**

**Jane and John Doe**
*Nurse*
*TERMINATED: 11/20/2020*

**Defendant**

**John Doe**
*Sergeant*
*TERMINATED: 11/20/2020*

**Defendant**

**Franklin Brown**                        represented by  **Andrew M Ramage**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

                                          **Dylan Grady**
                                          (See above for address)
                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Kayla McClaren**                        represented by  **Andrew M Ramage**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

                                          **Dylan Grady**
                                          (See above for address)
                                          *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/18/2020 | 1 | COMPLAINT against All Defendants, filed by Patrick Sawyer. (Attachments: # 1 cover letter)(SAG, ilcd) (Entered: 08/19/2020) |
| 08/18/2020 | 3 | PETITION TO PROCEED IN FORMA PAUPERIS, filed by Patrick Sawyer.(SAG, ilcd) (Entered: 08/20/2020) |
| 08/18/2020 | 4 | MOTION to Request Counsel by Plaintiff Patrick Sawyer. Responses due by 9/1/2020 (SAG, ilcd) (Entered: 08/20/2020) |
| 08/20/2020 | 2 | NOTICE OF CASE OPENING. Please be advised that your case has been assigned to Judge James Shadid. Effective immediately, all documents should be mailed or scanned to the Peoria Division, 100 NE Monroe Street, Peoria, IL 61602. Merit Review Deadline set for 9/9/2020. (Attachments: # 1 Notice Regarding Privacy Issues) (SAG, ilcd) (Entered: 08/20/2020) |
| 08/20/2020 | 5 | Letter from Clerk of Court to Lincoln CC Trust Fund Dept. requesting ledgers 2/18/20 through 8/18/20 (SAG, ilcd) (Entered: 08/20/2020) |
| 09/10/2020 | 6 | +++ PRISONER TRUST FUND LEDGER. by Patrick Sawyer (SAG, ilcd) (Entered: 09/11/2020) |

| | | |
|---|---|---|
| 09/11/2020 | | TEXT ORDER granting 3 Petition to Proceed In Forma Pauperis. Pursuant to 28 U.S.C. Section 1915(b)(1), Plaintiff is assessed an initial partial filing fee of $34.30. The agency having custody of Plaintiff is directed to forward the initial partial filing fee from Plaintiff's account to the Clerk of Court within 30 days of this order. After payment of the initial partial filing fee (or immediately if no funds are available for that payment) the agency having custody of Plaintiff shall make monthly payments of 20 percent of the preceding month's income credited to Plaintiff's account to the Clerk of Court. Income includes all deposits from any source, including gifts. The agency having custody of the plaintiff shall forward these payments each time Plaintiff's account exceeds $10, until the filing fee of $350 is paid in full. Plaintiff is ultimately responsible for ensuring that the initial partial filing fee and required monthly payments are made. Failure to do so may result in dismissal of this case. The Clerk is directed to mail a copy of this order to Plaintiff's place of confinement, to the attention of the Trust Fund Office, and to Plaintiff. Entered by Judge James E. Shadid on 9/11/2020. (SAG, ilcd) (Entered: 09/11/2020) |
| 11/20/2020 | 7 | MERIT REVIEW ORDER entered by Judge James E. Shadid on 11/20/2020. IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO: 1) Add Defendants Nurse Frank and Nurse Kayla; 2) Dismiss Defendants IDOC, Lincoln Correctional Center, Nurse Jane Doe, Nurse Jane and John Doe, Nursing Director Lisa Hopps, Sergeant John Doe, and Wexford Healthcare Services for failure to state a claim upon which relief can be granted pursuant to by 28 U.S.C. Sec 1915A; 3) Deny Plaintiff's motion for appointment of counsel, 4 ; 4) Attempt service on Defendants pursuant to the standard procedures; 5) Set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines; and 6) Enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act. See written order. (KE, ilcd) (Entered: 11/20/2020) |
| 11/20/2020 | 8 | HIPAA QUALIFIED PROTECTIVE ORDER entered by Judge James E. Shadid on 11/20/2020. See written order. (KE, ilcd) (Entered: 11/20/2020) |
| 11/20/2020 | 9 | REQUEST FOR WAIVER OF SERVICE and Notice of Lawsuit sent to Frank, Kayla, Kottoman on 11/20/2020. (Attachments: # 1 Waiver Kayla, # 2 Waiver Frank)(KE, ilcd) (Entered: 11/20/2020) |
| 12/01/2020 | | Waiver of Service Returned Unexecuted as to. Kottoman, filed by Patrick Sawyer. (SAG, ilcd) (Entered: 12/01/2020) |
| 12/01/2020 | 10 | SECOND REQUEST FOR WAIVER OF SERVICE and Notice of Lawsuit sent to. Kottoman on 12/1/2020. (SAG, ilcd) (Entered: 12/01/2020) |
| 12/07/2020 | | Prisoner Initial Partial Filing Fee received 12/7/2020, in the amount of $142.41; receipt number 14626039180. (JS, ilcd) (Entered: 12/07/2020) |
| 01/06/2021 | | Waiver of Service Returned Unexecuted as to. Frank,. Kayla, filed by Patrick Sawyer. (SAG, ilcd) (Entered: 01/06/2021) |
| 01/06/2021 | 11 | SECOND REQUEST FOR WAIVER OF SERVICE and Notice of Lawsuit sent to. Frank,. Kayla on 1/6/2021. (Attachments: # 1 waiver 2)(SAG, ilcd) (Entered: 01/06/2021) |
| 01/07/2021 | 12 | WAIVER OF SERVICE Returned Executed by Patrick Sawyer.. Frank waiver sent on 11/20/2020, answer due 1/19/2021. (AEM, ilcd) (Entered: 01/08/2021) |
| 01/19/2021 | 13 | NOTICE of Appearance of Attorney by Andrew M Ramage on behalf of. Frank (Ramage, Andrew) (Entered: 01/19/2021) |
| 01/19/2021 | 14 | NOTICE of Appearance of Attorney by Dylan Grady on behalf of. Frank (Grady, Dylan) (Entered: 01/19/2021) |
| 01/19/2021 | 15 | ANSWER to 1 Complaint AND AFFIRMATIVE DEFENSES by. Frank.(Grady, Dylan) (Entered: 01/19/2021) |
| 01/22/2021 | 16 | WAIVER OF SERVICE Returned Executed as to Nurse Kayla waiver sent on 11/20/2020, answer due 1/19/2021. (AEM, ilcd) Modified on 1/25/2021 (AEM, ilcd). (Entered: 01/25/2021) |
| 02/02/2021 | 17 | NOTICE of Appearance of Attorney by Dylan Grady on behalf of. Kottoman (Grady, Dylan) (Entered: 02/02/2021) |
| 02/02/2021 | 18 | NOTICE of Appearance of Attorney by Andrew M Ramage on behalf of. Kottoman (Ramage, Andrew) (Entered: 02/02/2021) |
| 02/02/2021 | 19 | WAIVER OF SERVICE Returned Executed by. Kottoman. (Grady, Dylan) (Entered: 02/02/2021) |
| 02/02/2021 | 20 | ANSWER to 1 Complaint AND AFFIRMATIVE DEFENSES by. Kottoman.(Grady, Dylan) (Entered: 02/02/2021) |
| 02/05/2021 | | TEXT ORDER entered by Judge James E. Shadid on 2/5/2021. On 1/22/2021, Defendant "Nurse Kayla" returned a waiver of service 16 . The deadline for filing an answer was 1/19/2021, but no answer has been filed. Sua sponte, Defendant "Nurse Kayla" is given an additional 21 days from the date of this Order to file an Answer. Answer is due on or before 2/26/2021. The Clerk is directed to send a copy of this Text Order to Defendant at the address where she was served.(SAG, ilcd) (Entered: 02/05/2021) |
| 02/10/2021 | 21 | CERTIFICATE of Service/Counsel *Certificate of Filing and Service of Subpoenas* by Dylan Grady on behalf of Franklin Brown,. Kayla, Steven Kottemann (Grady, Dylan) (Entered: 02/10/2021) |

| 02/11/2021 | | Reset Deadline: Rule 16 Deadline 2/26/2021. (SAG, ilcd) (Entered: 02/11/2021) |
|---|---|---|
| 02/17/2021 | 22 | NOTICE of Appearance of Attorney by Andrew M Ramage on behalf of. Kayla (Ramage, Andrew) (Entered: 02/17/2021) |
| 02/17/2021 | 23 | NOTICE of Appearance of Attorney by Dylan Grady on behalf of. Kayla (Grady, Dylan) (Entered: 02/17/2021) |
| 02/17/2021 | 24 | ANSWER to 1 Complaint AND AFFIRMATIVE DEFENSES by. Kayla.(Grady, Dylan) (Entered: 02/17/2021) |
| 03/05/2021 | 25 | NOTICE of Change of Address by Patrick Sawyer (AEM) (Entered: 03/08/2021) |
| 03/08/2021 | 26 | Letter from Patrick Sawyer (AEM) (Entered: 03/09/2021) |
| 04/05/2021 | 27 | Letter from Patrick Sawyer. (AEM) (Entered: 04/05/2021) |
| 04/06/2021 | | TEXT ORDER entered by Judge James E. Shadid on 4/6/2021. Plaintiff has now filed two letters with the Court noting his need for help with his litigation and his failure to receive any filings in this case 26 , 27 . The Court notes the last Defendant has now filed an answer to the complaint. Therefore, this case will be set for a hearing pursuant to Rule 16 of the Federal Rules of Civil Procedure. The Court will review Plaintiff's claims and Defendants' response and set deadlines during this hearing. The Clerk is to provide Plaintiff with a copy of the docket sheet. However, Plaintiff is admonished he must not send letters to the Court. Instead, he may file motions if he is asking for specific action from the Court, or he may file a response to a Court order, or a motion filed by Defendants. (SAG) (Entered: 04/06/2021) |
| 04/06/2021 | 28 | Remark: Docket sheet attached pursuant to Text Order 4/6/2021 (SAG) (Entered: 04/06/2021) |
| 04/09/2021 | | TEXT ORDER entered by Judge James E. Shadid on 4/9/2021. The Court sets this matter for a Rule 16 scheduling conference on April 20, 2021, at 9:50 a.m., by telephone conference from Peoria. The Clerk is directed to issue a writ for plaintiff's appearance. Counsel is directed to call: 571-353-2300, then enter 003619692#. The parties should be prepared to discuss a discovery schedule, whether Defendants will assert affirmative defenses such as exhaustion, and whether an early settlement is feasible.(SAG) (Entered: 04/09/2021) |
| 04/09/2021 | 29 | TELEPHONE WRIT issued to Pontiac CC for hearing 4/20/2021 at 9:50 a.m. Emailed to Pontiac CC. (SAG) (Entered: 04/09/2021) |
| 04/20/2021 | | Minute Entry for proceedings held before Judge James E. Shadid: This cause is before the Court for Rule 16 hearing. Plaintiff appeared pro se. Defendants were represented by Attorney Dylan Grady. The Court reviewed the claim and potential defenses. Plaintiff says he was suffering from abdominal pain and bleeding in 2018, but Defendants were deliberately indifferent to his condition. As a result, Plaintiff repeatedly fell and suffered serious injuries before he was taken to an outside hospital. Plaintiff was diagnosed with a variety of medical conditions at the hospital. Defendants believe exhaustion may be an issue and note Plaintiff has not signed a release for mental health records. After discussing the issue with the parties, Plaintiff has agreed to release the records to the Court for in camera review, and the Court will determine if any of the records are relevant to this case. Plaintiff is advised if he receives an authorization for the release of his mental health records from the Court, he must sign and return the document to the Court within seven days. A Scheduling Order will be entered. The Court will also abide by the following deadlines: 1) any motion on the issue of exhaustion must be filed on or before June 4, 2021; 2) all discovery including depositions must be completed on or before August 18, 2021; and 3) any summary judgment on the merits must be filed on or before September 17, 2021. (Court Reporter NM.) (JS) (Entered: 04/20/2021) |
| 04/20/2021 | 30 | CERTIFICATE of Service/Counsel *Certificate of Filing and Service of Subpoena* by Dylan Grady on behalf of Franklin Brown, Steven Kottemann, Kayla McClaren (Grady, Dylan) (Entered: 04/20/2021) |
| 04/20/2021 | 31 | SCHEDULING ORDER entered by Judge James E. Shadid on 4/20/2021. Discovery due by 8/18/2021. Motions due by 9/17/2021. SEE WRITTEN ORDER. (Attachments: # 1 Consent to Magistrate Packet)(SAG) (Entered: 04/20/2021) |
| 06/04/2021 | 32 | MOTION for Extension of Time to File *Dispositive Motion Regarding Exhaustion* by Defendant Steven Kottemann. Responses due by 6/18/2021 (Grady, Dylan) (Entered: 06/04/2021) |
| 06/07/2021 | | TEXT ORDER entered by Judge James E. Shadid on 6/7/2021. Defendant Kottemann's motion for an extension to time to file a motion for summary judgment on exhaustion is granted 32 . The motion must be filed on or before June 14, 2021. (SAG) (Entered: 06/07/2021) |
| 06/11/2021 | 33 | MOTION for Summary Judgment *Regarding Exhaustion of Administrative Remedies* by Defendant Steven Kottemann. Responses due by 7/2/2021 (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Grady, Dylan) (Entered: 06/11/2021) |
| 06/11/2021 | 34 | RULE 56 NOTICE entered (AEM) (Entered: 06/11/2021) |
| 06/23/2021 | 35 | RESPONSE to Motion re 33 MOTION for Summary Judgment *Regarding Exhaustion of Administrative Remedies* filed by Plaintiff Patrick Sawyer. (AEM) (Entered: 06/23/2021) |
| 06/28/2021 | 36 | AFFIDAVIT re 35 Response to Motion by Patrick Sawyer. (SAG) (Entered: 06/28/2021) |

| | | |
|---|---|---|
| 06/28/2021 | 37 | AFFIDAVIT re 35 Response to Motion by Patrick Sawyer. (SAG) (Entered: 06/28/2021) |
| 07/07/2021 | 38 | REPLY to Response to Motion re 33 MOTION for Summary Judgment *Regarding Exhaustion of Administrative Remedies* filed by Defendant Steven Kottemann. (Attachments: # 1 Exhibit 5)(Grady, Dylan) (Entered: 07/07/2021) |
| 07/12/2021 | 39 | MOTION by Plaintiff Patrick Sawyer. Responses due by 7/26/2021 (SAG) (Entered: 07/12/2021) |
| 07/19/2021 | 40 | MOTION to Stay *Discovery* by Defendants Franklin Brown, Steven Kottemann, Kayla McClaren. Responses due by 8/2/2021 (Grady, Dylan) (Entered: 07/19/2021) |
| 07/20/2021 | | TEXT ORDER entered by Judge James E. Shadid on 7/20/2021. Defendants have filed a motion for summary judgment on the issue of exhaustion of administrative remedies and Plaintiff has filed a response and two affidavits in response 35 , 36 , 37 . Plaintiff has now filed a motion asking to dismiss Defendants dispositive motion stating "no such documents are within the plaintiff's custody or control." 39 . Plaintiff does not provide any further information and the Court does not know which documents Plaintiff is referencing. In addition, Plaintiff has filed an appropriate response to the pending motion. Therefore, his motion to dismiss is denied 39 . The Defendants' motion to stay discovery until the Court considers the pending motion is granted 40 . No further discovery will be conducted until the Court considers the motion for summary judgment. (SAG) (Entered: 07/20/2021) |
| 09/13/2021 | 41 | MOTION for Trial by Plaintiff Patrick Sawyer. Responses due by 9/27/2021 (KE) (Entered: 09/13/2021) |
| 09/14/2021 | | TEXT ORDER entered by Judge James E. Shadid on 9/14/2021. Plaintiff's motion for a jury trial is denied 41 . The Court must first consider the pending motion for summary judgment before this case can proceed to trial. (SAG) (Entered: 09/14/2021) |
| 11/15/2021 | 42 | NOTICE of Electronic Filing by Plaintiff Patrick Sawyer. (JS) Modified on 11/30/2021 to correct date of filing (SAG). (Entered: 11/29/2021) |
| 01/31/2022 | 43 | Letter from Patrick Sawyer. (AEM) (Entered: 01/31/2022) |
| 02/02/2022 | 44 | Remark: Docket sheet attached in response to Plaintiff's request for status 43 (SAG) (Entered: 02/02/2022) |
| 03/28/2022 | 45 | SUMMARY JUDGMENT ORDER entered by Judge James E. Shadid on 3/28/2022. IT IS THEREFORE ORDERED: 1) Defendant Dr. Kottemann's Motion for Summary Judgment on the issue of exhaustion of administrative remedies is DENIED pursuant to Federal Rule of Civil Procedure 56. 33 . 2) The Court will abide by the following scheduling deadlines: a) all discovery must be completed on or before July 29, 2022; and b) any dispositive motions on the merits must be filed on or before August 31, 2022. A Scheduling Order with additional information concerning discovery was previously entered. See April 20, 2021 Scheduling Order. The Clerk is to provide another copy to the pro se Plaintiff. SEE FULL WRITTEN ORDER.(SAG) (Entered: 03/28/2022) |
| 04/05/2022 | 46 | NOTICE of Appearance of Attorney by Sheila A Genson on behalf of Patrick Sawyer (Genson, Sheila) (Entered: 04/05/2022) |
| 04/05/2022 | 47 | NOTICE of Appearance of Attorney by Zane D Smith on behalf of Patrick Sawyer (Smith, Zane) (Entered: 04/05/2022) |
| 04/08/2022 | 48 | CERTIFICATE *of Service and Filing of Subpoena*. (Grady, Dylan) (Entered: 04/08/2022) |
| 05/04/2022 | 49 | CERTIFICATE of Service/Counsel *of Defendants' First Supplemental Initial Disclosures* by Andrew M Ramage on behalf of Steven Kottemann (Ramage, Andrew) (Entered: 05/04/2022) |
| 05/18/2022 | 50 | CERTIFICATE OF SERVICE by Patrick Sawyer (Smith, Zane) (Entered: 05/18/2022) |
| 07/29/2022 | 51 | MOTION to Amend/Correct 45 Order on Motion for Summary Judgment,,,,,, Set/Reset Deadlines:,, by Defendants Franklin Brown, Steven Kottemann, Kayla McClaren. Responses due by 8/12/2022 (Grady, Dylan) (Entered: 07/29/2022) |
| 08/09/2022 | | TEXT ORDER entered by Judge James E. Shadid on 8/9/2022. The joint motion to extend scheduling deadlines is granted 51 . All discovery must be completed on or before October 14, 2022, and any dispositive motion must be filed on or before November 14, 2022. This matter is referred to the Magistrate Judge for discovery.(SAG) (Entered: 08/09/2022) |
| 08/09/2022 | | TEXT ORDER: Due to the setting of a Dispositive Motion ddl of 11/14/2022, the Court sets a Final Pretrial Conference on 3/16/2023 at 2:00 PM and a Jury Trial on 4/17/2023 at 9:00 AM, both hearings to be held in Courtroom A in Peoria before Judge James E. Shadid. Entered by Magistrate Judge Jonathan E. Hawley on 8/9/22. (WG) Modified on 8/11/2022 to correct FPT date (KB). (Entered: 08/09/2022) |
| 08/09/2022 | | Set/Reset Hearings: Modification to Text Order entered on 8/9/2022: Final Pretrial Conference is set on 3/16/2023 at 02:00 PM in Courtroom A in Peoria before Judge James E. Shadid. (KB) (Entered: 08/11/2022) |
| 08/31/2022 | 52 | CERTIFICATE OF SERVICE by Steven Kottemann (Ramage, Andrew) (Entered: 08/31/2022) |
| 09/06/2022 | 53 | CERTIFICATE of Service/Counsel *for Karen McClaren's Answers to Plaintiff's Interrogatories* by Andrew M Ramage on behalf of Kayla McClaren (Ramage, Andrew) (Entered: 09/06/2022) |

| 09/07/2022 | 54 | CERTIFICATE of Service/Counsel *Defendants' Responses to Plaintiff's Second Requests for Production* by Dylan Grady on behalf of Steven Kottemann (Grady, Dylan) (Entered: 09/07/2022) |
| 09/21/2022 | 55 | CERTIFICATE of Service/Counsel *Defendants' Second Supplemental Disclosures* by Andrew M Ramage on behalf of Steven Kottemann (Ramage, Andrew) (Entered: 09/21/2022) |
| 09/21/2022 | 56 | CERTIFICATE OF SERVICE by Patrick Sawyer (Genson, Sheila) (Entered: 09/21/2022) |
| 09/22/2022 | 57 | CERTIFICATE of Service/Counsel *for Frank Brown's Answers and Objections to Plaintiff's Interrogatories* by Andrew M Ramage on behalf of Franklin Brown (Ramage, Andrew) (Entered: 09/22/2022) |
| 09/23/2022 | 58 | CERTIFICATE of Service/Counsel *Filing and Service of Subpoena* by Andrew M Ramage on behalf of Steven Kottemann (Ramage, Andrew) (Entered: 09/23/2022) |
| 09/26/2022 | 59 | MOTION for Extension of Time to Complete Discovery , MOTION to Compel *Defendant's Deposition* by Plaintiff Patrick Sawyer. Responses due by 10/11/2022 (Genson, Sheila) (Entered: 09/26/2022) |
| 09/26/2022 | 60 | CERTIFICATE OF SERVICE by Patrick Sawyer *(Second Amended Notice of Deposition for Franklin Brown)* (Genson, Sheila) (Entered: 09/26/2022) |
| 09/27/2022 | | TEXT ORDER granting 59 Motion for an Extension of Time to Complete Discovery and Motion to Compel Defendants' Depositions. Defendants are to provide a workable date certain for the deposition of McLaren and discovery is extended through that date. All other deadlines and hearings remain as previously set. Entered by Magistrate Judge Jonathan E. Hawley on 9/27/22. (WG) (Entered: 09/27/2022) |
| 10/03/2022 | 61 | CERTIFICATE OF SERVICE by Franklin Brown, Steven Kottemann, Kayla McClaren *of Subpoena for the Production of Documents* (Ramage, Andrew) (Entered: 10/03/2022) |
| 10/12/2022 | 62 | CERTIFICATE of Service/Counsel *of Defendants' Third Supplemental Initial Disclosures* by Andrew M Ramage on behalf of Steven Kottemann (Ramage, Andrew) (Entered: 10/12/2022) |
| 10/13/2022 | 63 | CERTIFICATE *of Service - Defendants' Expert Disclosures*. (Grady, Dylan) (Entered: 10/13/2022) |
| 11/14/2022 | 64 | MOTION for Extension of Time to File *Dispositive Motion* by Defendants Franklin Brown, Steven Kottemann, Kayla McClaren. Responses due by 11/28/2022 (Grady, Dylan) (Entered: 11/14/2022) |
| 12/06/2022 | | TEXT ORDER granting the 64 Motion for Extension of Time to File. Dispositive Motion deadline is extended to 12/19/2022. Due to that extension, the Final Pretrial Conference set for 3/16/23 is VACATED and RESET to 4/21/2023 at 11:00 AM and the Jury Trial set for 4/17/23 is vacated and RESET to 5/22/2023 at 9:00 AM. both hearings will be held in Courtroom A in Peoria before Judge James E. Shadid. Entered by Magistrate Judge Jonathan E. Hawley on 12/6/22. (WG) (Entered: 12/06/2022) |
| 12/19/2022 | 65 | Second MOTION for Extension of Time to File *Dispositive Motion* by Defendants Franklin Brown, Steven Kottemann, Kayla McClaren. Responses due by 1/3/2023 (Grady, Dylan) (Entered: 12/19/2022) |
| 12/20/2022 | | TEXT ORDER granting 65 Second Motion for Extension of Time. Dispositive Motions due by 12/29/2022. Entered by Magistrate Judge Jonathan E. Hawley on 12/20/22. (WG) (Entered: 12/20/2022) |
| 12/29/2022 | 66 | MOTION for Summary Judgment by Defendants Franklin Brown, Steven Kottemann, Kayla McClaren. Responses due by 1/19/2023 (Attachments: # 1 Exhibit Sawyer Deposition, # 2 Exhibit Kottemann Deposition, # 3 Exhibit McClaren Deposition, # 4 Exhibit Brown Deposition, # 5 Exhibit 5A - Medical Records, # 6 Exhibit 5B - Medical Records, # 7 Exhibit 5C - Medical Records, # 8 Exhibit 5D - Medical Records, # 9 Exhibit 5E - Medical Records, # 10 Exhibit Injury Reports)(Grady, Dylan) (Entered: 12/29/2022) |
| 01/19/2023 | 67 | MOTION for Extension of Time to File Response/Reply as to 66 MOTION for Summary Judgment *and Reset Trial Date* by Plaintiff Patrick Sawyer. Responses due by 2/2/2023 (Genson, Sheila) (Entered: 01/19/2023) |
| 01/20/2023 | | TEXT ORDER Entered by Judge James E. Shadid on 1/20/23. Plaintiff's unopposed motion for an extension of time to respond to the pending motion for summary judgment and to reset the trial date is granted. 67 . Plaintiff must file a response to the pending dispositive motion on or before February 21, 2023. The April 21, 2023 pretrial conference is vacated and the May 22, 2023 trial date is vacated. An order will be entered with the rescheduled dates.(ANW) (Entered: 01/20/2023) |
| 02/21/2023 | 68 | Second MOTION for Extension of Time to File Response/Reply *UNOPPOSED* by Plaintiff Patrick Sawyer. Responses due by 3/7/2023 (Genson, Sheila) (Entered: 02/21/2023) |
| 02/22/2023 | | TEXT ORDER Entered by Judge James E. Shadid on 2/22/23. Plaintiff's second, unopposed motion for an extension of time to file a response to the pending motion for summary judgment is granted 68 . Plaintiff must file his response on or before March 24, 2023.(ANW) (Entered: 02/22/2023) |
| 02/22/2023 | | Set/Reset Deadlines/Hearings: Extra Response to Motion ddl terminated. (ANW) (Entered: 02/22/2023) |
| 03/24/2023 | 69 | RESPONSE to Motion re 66 MOTION for Summary Judgment filed by Plaintiff Patrick Sawyer. (Genson, Sheila) (Entered: 03/24/2023) |

| | | |
|---|---|---|
| 03/27/2023 | 70 | MOTION for Leave to File Document Under Seal *(Exhibits to Response to Motion for Summary Judgment)* by Plaintiff Patrick Sawyer. Responses due by 4/10/2023 (Genson, Sheila) (Entered: 03/27/2023) |
| 03/27/2023 | 71 | +++ SEALED DOCUMENT.. (Genson, Sheila) (Entered: 03/27/2023) |
| 03/27/2023 | 72 | +++ SEALED DOCUMENT.. (Genson, Sheila) (Entered: 03/27/2023) |
| 03/27/2023 | 73 | +++ SEALED DOCUMENT.. (Genson, Sheila) (Entered: 03/27/2023) |
| 03/27/2023 | 74 | +++ SEALED DOCUMENT.. (Genson, Sheila) (Entered: 03/27/2023) |
| 04/07/2023 | 75 | MOTION for Extension of Time to File Response/Reply as to 69 Response to Motion *Dispositive Motion* by Defendants Franklin Brown, Steven Kottemann, Kayla McClaren. Responses due by 4/21/2023 (Grady, Dylan) (Entered: 04/07/2023) |
| 04/10/2023 | | TEXT ORDER Entered by Judge James E. Shadid on 4/10/23. The unopposed motion to file documents under seal is granted 70 . Defendants motion for an extension of time to file a response to the pending motion for summary judgment is granted 75 . A response must be filed on or before April 17, 2023. (ANW) (Entered: 04/10/2023) |
| 04/17/2023 | 76 | REPLY to Response to Motion re 66 MOTION for Summary Judgment filed by Defendants Franklin Brown, Steven Kottemann, Kayla McClaren. (Grady, Dylan) (Entered: 04/17/2023) |
| 09/08/2023 | 77 | ORDER ON MOTION FOR SUMMARY JUDGMENT entered by Judge James E. Shadid on 9/8/2023. IT IS THEREFORE ORDERED: (1) Defendants' Motion for Summary Judgment 66 is GRANTED. This action is DISMISSED WITH PREJUDICE. Plaintiff takes nothing. The parties will bear their own costs. The Clerk is directed to enter judgment and close this case. (2) Although Plaintiff's case has been dismissed, he remains responsible for the remainder of the $350.00 filing fee. (3) If Plaintiff wishes to appeal this judgment, he must file a Notice of Appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). (4) To proceed in forma pauperis on appeal, Plaintiff must file a Motion for Leave to Proceed on Appeal in forma pauperis and identify the issues he will present on appeal to assist the Court in determining whether the appeal is taken in good faith. Fed. R. App. P. 24(a)(1)(c); Celske v. Edwards, 164 F.3d 396, 398 (7th Cir. 1999) (An appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose... has some merit" from a legal perspective). If Plaintiff chooses to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal. SEE FULL WRITTEN ORDER. (SAG) (Entered: 09/08/2023) |
| 09/11/2023 | 78 | JUDGMENT entered in a civil case (SAG) (Entered: 09/11/2023) |
| 09/19/2023 | 79 | BILL OF COSTS . (Ramage, Andrew) (Entered: 09/19/2023) |
| 09/19/2023 | | Notice re 79 Bill of Costs : Costs will be taxed in the amount of $2,135.84; Parties have 14 days to file objections. (AEM) (Entered: 09/19/2023) |
| 09/19/2023 | | Set/Reset Deadlines/Hearings: Objections to Bill of Costs Deadline 10/3/2023. (AEM) (Entered: 09/19/2023) |
| 10/03/2023 | 80 | Response by Patrick Sawyer re 79 Bill of Costs . (Genson, Sheila) (Entered: 10/03/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/05/2023 10:51:37 | | |
| **PACER Login:** | zsmith4814 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:20-cv-03211-JES-JEH |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |